UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PHILLIP THIELEN,

    Petitioner,

  v.

CHARLES DANIELS, Warden,
Federal Correctional Institution,
Sheridan, Oregon,

    Respondent.

Civil No. 04-1622-HA

OPINION
AND ORDER

---

Phillip Thielen
FCI Sheridan
PO Box 5000
Sheridan, Oregon 97378
    *Pro Se* Petitioner

1 - OPINION AND ORDER

Karin J. Immergut
United States Attorney
Craig J. Casey
Assistant United States Attorneys
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204
    Attorneys for Respondent

HAGGERTY, Chief Judge:

Petitioner is a federal inmate housed at the Federal Prison Camp in Sheridan, Oregon (FPC Sheridan). He filed a *pro se* Petition for Writ of Habeas Corpus (Doc. #1) on November 4, 2004. For the following reasons, the petition is denied.

**<u>RELEVANT BACKGROUND</u>**

On August 14, 2002, petitioner was sentenced to seventy months imprisonment followed by a three-year term of supervised release for Possession of a Controlled Substance with Intent to Distribute in violation of 28 U.S.C. § 841(a)(1). His projected release date, after calculating Good Conduct Time, is October 2, 2007.

Petitioner arrived at FPC Sheridan on September 23, 2002. Upon arrival, petitioner was issued a copy of the Admission and Orientation (A&O) handbook, which advised him of the institution's rules, policies, and procedures.

In January 2003, an FPC Sheridan Special Investigative Services (SIS) Technician was conducting telephone monitoring and listened to one of petitioner's calls. Petitioner was heard informing the recipient that he intended to commit misconduct through use of the mail. Thereafter, the SIS began monitoring petitioner's mail pursuant to 28 C.F.R. § 540.14(c)(1), which provides, "Staff may open a sentenced inmate's outgoing general

correspondence . . . [i]f there is reason to believe it would interfere with the orderly running of the institution, that it would be threatening to the recipient, or that it would facilitate criminal activity . . . ."

On February 8, 2003, petitioner wrote a letter to a former business partner, in which he stated:

> You know me, I'm always wanting to know what the rules are, and what the opponent is caple [sic] of knowing or finding out. If I were to discuss this on the phone, it is possible that I could get hassled for conspiring to circumvent the computer rules.
>
> ***
>
> So, [i]f we discuss any of this on the phone, we need to frame it in the context of how you or I would do this in a free world application, like checking on your employees or how to deal with it. Or, how I might have you set up my computer at home to spy on my wife.
>
> ***
>
> Then there are a few other things that I thought of, like a wireless network card, or some kind of wireless access that the administrator could have to our computers. I'm sure they would not ever have us hooked up to a network that we could dammage [sic]. However, maybe there is a limited thing that a wireless card could do. I have no idea what a wireless card might look like from the back of the computer, but I certainly do know what the regular cards look like for printer ports, monitor ets. [sic]. It could be preceived [sic] as a very suspicious act.
>
> ***
>
> Anyway, it's pretty exciting for me to try to figure all this out. If I do the wrong thing, I would get kicked out of the class. If I'm a good boy, I can continue to use the computer after the class is finished during lab time. There is also another class when this one ends in Excel.

Pet. for Writ of Habeas Corpus, Ex. A.

Two days later, an SIS Technician discovered the letter and filled out an Incident Report (IR), wherein he described the incident as "Altering government property (Planning), Use of the telephone for abuses other than criminal activity, [and] Unauthorized use of the mail," *id.*, in violation of Codes 218A, 297A, and 410. Petitioner received a copy of the IR, which generally described the nature of the incident, as well as identified portions of the letter. On February 13, 2002, petitioner met with the Unit Disciplinary Committee (UDC) and provided a brief statement. The UDC referred the charges to the Disciplinary Hearing Officer (DHO) for further hearing. That same day, petitioner received a "Notice of Disciplinary Hearing Before the Disciplinary Hearing Officer." Petitioner checked a box indicating that wanted to have a staff representative present at the DHO hearing, but that he did "not" wish to call witnesses. Pet. for Writ of Habeas Corpus, Ex. A. Petitioner signed and dated the Notice. *Id.*

The DHO hearing was held on February 24, 2003. Petitioner was advised of his rights and requested the appointment of a staff representative, John Kincade. Petitioner again indicated that he did not intend to call any witnesses. "Prior to the DHO hearing, the DHO asked Staff Representative Kincade and Inmate Thielen if they were ready to proceed. Both indicated they were ready. Inmate Thielen was asked if he was satisfied with Mr. Kincade's assistance. Inmate Thielen indicated he was satisfied and ready to proceed." *Id.* Petitioner then made the following statement:

> I was not planning to bring a computer card in. In the class, I have heard rumors about what is in the class computers. I could not ask Mr. Kincade, he would become suspicious of why I asked. I was so concerned about what was going on, I was afraid they would

> take it wrong. It was a mystery to me on how the computer works.
> I was just trying to figure out how we could be watched. We were not
> planning anything. I know they are watching me, I was just trying
> to figure out how.

*Id.*

On March 6, 2003, the DHO issued his report. He expunged the charges of Planning to Alter Government Property and Unauthorized Use of the Mail from petitioner's record, but found that petitioner had committed the prohibited act of Planning to Use the Telephone for Abuses Other Than Criminal Activity. The report indicates that the DHO considered the letter written by petitioner and petitioner's statements given during the investigation and at the UDC and DHO hearings. The DHO sanctioned petitioner to loss of telephone privileges for one year, disallowance of twenty-seven days of good conduct time, and removal from computer class for one year.

## **ANALYSIS**

Petitioner alleges that he was deprived of his procedural due process rights under the Fifth and Fourteenth Amendments to the United States Constitution. He asserts three grounds for relief: (1) defendant violated petitioner's constitutional rights by opening his outgoing mail without probable cause; (2) defendant failed to provide to petitioner a copy of "relevant material" prior to the DHO hearing in violation of 28 C.F.R. § 541.14; and (3) defendant unconstitutionally imposed a disciplinary action upon plaintiff for violating a policy of which he did not have fair notice. As a result, petitioner seeks expungement of the IR from his record and files, and restoration of the lost twenty-seven days of good time credit.

What due process requires

The Due Process Clause of the Fifth and Fourteenth Amendment applies to prisoners. *See generally, Haines v. Kerner*, 404 U.S. 519 (1972) (prisoners may not be deprived of life, liberty, or property without due process of law). However, "the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). For example, in prison disciplinary proceedings, a prisoner is not entitled to an attorney, as well other benefits to which a defendant in a criminal prosecution may be entitled. *Id.*

In *Wolff*, the Supreme Court articulated five elements required for procedural due process with respect to a prison disciplinary hearing: (1) written notice of the claimed violation(s) at least twenty-four hours in advance of the hearing; (2) a written statement by the factfinders as to the evidence relied on and the reason for the disciplinary action; (3) an opportunity to call witnesses and present evidence; (4) assistance for illiterate inmates or in complicated case; and (5) an impartial hearing body. 418 U.S. at 563-70.

The Court later decided *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 455 (1985), wherein the Court held "that the requirements of due process are satisfied if *some evidence* supports the decision by the prison disciplinary board to revoke good time credits." (emphasis added). In other words, "if there was some evidence from which the conclusion of the administrative tribunal could be deduced," the

board's decision to revoke a prisoner's good time credits will be upheld. *Id.* (citation and internal quotations omitted).

FPC Sheridan has adopted the following disciplinary procedures: an inmate suspected of misconduct is issued an IR containing the facts or evidence to be used against the inmate in the disciplinary hearings. After an investigation is completed, the UDC convenes to review the IR, discuss the inmate's rights, and ascertain whether the inmate desires witnesses or a staff representative. If the conduct is serious enough, the UDC refers the matter to a DHO for a final hearing. P.S. 5270.07.

In this case, petitioner was given advance written notice of the charges against him more than twenty-four hours prior to his appearance before the DHO. He was afforded the opportunity to request a staff representative, call witnesses, and present evidence. Petitioner's requested a staff representative, Mr. Kincade, to appear with him at the hearing. Petitioner indicated that he was satisfied with Mr. Kincade's representation and that he was ready to proceed with the hearing. Petitioner was permitted to make a statement on his behalf, which is recorded in the DHO report. During the course of the hearing, petitioner made no complaint about any procedural errors. The court finds that procedural due process during the disciplinary hearings, as defined in *Wolff*, was afforded to petitioner. The court now addresses petitioner's specific grounds for relief.

<u>No probable cause is needed to open a prisoner's outgoing mail</u>

28 C.F.R. § 540.14(c)(1) provides, "Staff may open a sentenced inmate's outgoing general correspondence . . . If there is reason to believe it would interfere with the orderly

running of the institution, that it would be threatening to the recipient, or that it would facilitate criminal activity . . . ." *See also* P.S. 5265.11. There is no requirement of probable cause. Petitioner was apprised, by way of the A&O Handbook, of this correspondence policy.

Prior to monitoring petitioner's outgoing mail, institution staff listened to a telephone conversation in which petitioner made statements that raised suspicion that he was going to attempt to commit misconduct through use of the mail. *See* Pet. for Writ of Habeas Corpus, Ex. B ("Information provided by the institution reveals that during routine telephone monitoring, investigative staff heard suspicious conversations during one of your phone calls."). This monitoring was allowed pursuant to 28 C.F.R. § 540.102 and Program Statement 5624.07, and has been upheld by the Ninth Circuit as being necessary to preserve the security and orderly management of the institution and to protect the public. *See United States v. Van Poyck*, 77 F.3d 285, 290-92 (9th Cir. 1996) (holding that a prisoner does not reasonably expect his or her outgoing calls to be private, and that even if the prisoner does so expect, the Fourth Amendment is not violated because institutional security concerns justify recordings) (citations omitted).

There is adequate evidence that prison officials overheard petitioner making statements during the course of a telephone call that alerted them to an attempt by petitioner to abuse the prison's correspondence policy. This was sufficient for prison officials to begin monitoring petitioner's outgoing mail.

//

Petitioner received the relevant evidence by way of the IR prior to the DHO hearing

Petitioner argues that his due process rights were violated because he did not receive a copy of his letter prior to the DHO hearing. 28 C.F.R. § 541.14 provides that "the DHO shall give a copy of the investigation *and other relevant materials* to the inmate's staff representative for use in presentation on the inmate's behalf." (emphasis added). The regulation does not define "relevant materials."

On February 10, 2003, well before the DHO hearing, petitioner received a copy of the IR that contained excerpts from his letter that formed the bases for the charges and, later, formed part of the evidence upon which the DHO relied to terminate petitioner's good time credit. There is no evidence that petitioner or Mr. Kincade requested a copy of the entire letter prior to the hearing. Moreover, the DHO's decision was not based solely on the excerpts from the letter. The DHO report reveals that the DHO considered all other available evidence, including petitioner's statements made to the investigating officer, the UDC, and the DHO.

Petitioner also argues that he did not receive due process because his requested witness, Bill Johnson, a computer assistant, did not appear at the DHO hearing. On February 13, 2003, petitioner signed and dated the "Notice of Discipline Hearing Before the Discipline Hearing Officer," and marked the box indicating that he elected to call no witnesses. Pet. for Writ of Habeas Corpus, Ex. A. On February 28, 2003, petitioner met with Mr. Kincade and indicated that he wanted to have Mr. Johnson act as a witness. *Id.* However, at the DHO hearing petitioner did not call any witnesses, and there is no

indication that one was requested. Petitioner made no objection to Mr. Johnson's absence at the DHO hearing.

Petitioner had fair notice of the charge by way of the Program Statements

The 2005 A&O Manual states at the end of the listing of offenses that "Aiding another person to commit any of these offenses, attempting to commit any of these offenses, and making plans to commit any of these offenses, in all categories of severity, shall be considered the same as a commission of the offenses itself." Pet'r Mot. to Supplement Evidence, Ex. A. This statement is not found in the 2002 A&O Manual petitioner received upon arrival. *Id.* Petitioner argues that the failure to disclose "planning" as an offensive act in the 2002 A&O Manual deprived him of fair notice.

This assertion is unpersuasive. The record before the court contains two letters petitioner wrote to DHO M. Griffith, attached as Exhibit A to the petition. Although respondent fails to cite to these letters in the responsive briefing, the court believes they are helpful to resolving petitioner's argument. In the letter dated February 17, 2004, petitioner acknowledges that the offense he was charged with "can be found in the 200 page PS 5270.07," and that it "is mentioned in the A&O manuel [sic] when it sites [sic] changes to the disciplinary procedures . . . ." Pet. for Writ of Habeas Corpus, Ex. A. Program Statement 5270.07 refers to "Inmate Discipline," and was known to petitioner to be available in the institution's law library. *Id.* In the subsequent letter to DHO Griffith dated February 25, 2004, petitioner again acknowledged the existence of the policy in the Program Statement and that "planning is mentioned as being considered the same as a commission of

the offense itself." *Id.* (internal quotation marks omitted). *Id.* The fact that petitioner may not have read Program Statement 5270.07 prior to the commission of the offense does not mean that he was not put on "fair notice" of its existence.

**CONCLUSION**

The court concludes that petitioner received adequate, constitutional due process as enunciated by *Wolff* and *Hill*. Petitioner's Petition for Writ of Habeas Corpus (Doc. #1) is DENIED.

IT IS SO ORDERED.

DATED this _7___ day of July, 2005.


_____/s/Ancer L.Haggerty_____
ANCER L. HAGGERTY
United States District Judge